1 JEFFREY A. COHEN, [State Bar 149615]
  jcohen@corichlaw.com
2 ERIK S. VELIE, [State Bar 252446]
  evelie@corichlaw.com
3 COHEN & RICHARDSON, PC
  2321 Rosecrans Avenue, Suite 4210
4 El Segundo, CA 90245-4911
  Telephone: (310) 469-9600
5 Fax: (310) 469-9610

6 Attorneys for Plaintiff, Global Development Strategies, Inc. and Global
  Distributions Services, Inc.

7

8                 UNITED STATES DISTRICT COURT

9                 CENTRAL DISTRICT OF CALIFORNIA

10

11 Global Development Strategies, Inc., a        Case No.
   Nevada Corporation; Global                    CV11-01966 CAS(AGRx)
12 Distribution, Services, Inc., a Nevada
   Corporation,                                  **PLAINTIFF'S EX PARTE
13                                                APPLICATION FOR
            Global Entities,                     TEMPORARY RESTRAINING
14                                                ORDER AND ORDER TO SHOW
       vs.                                        CAUSE RE: PRELIMINARY
15                                                INJUNCTION AND
   Mobile Motion, Inc., a California              MEMORANDUM OF POINTS
16 Corporation; Doron Kim, an individual,         AND AUTHORITIES IN SUPPORT
   E Dating For Free, Inc., a California          THEREOF.**
17 Corporation; and DOES 1-10.
                                                  [Filed concurrently with (1) Affidavit
18          Defendants.                           of Brandon Campbell; (2) Certificate
                                                  of Erik Velie; (3) Affidavit of Peter
19                                                Stephens and (4) [Proposed]
                                                  Temporary Restraining Order and OSC
20                                                re Preliminary Injunction]
21
                                                  Judge:
22
                                                  Courtroom:
23
                                                  Hearing Date:
24

25

26

27 ///

28

1    Plaintiff, Global Development Strategies ("GDS"), and Plaintiff, Global

2   Distribution Services ("GD")(together GDS and GD shall hereafter be collectively

3   referred to as the "GDS Entities" or "Global Entities") hereby move this Court

4   pursuant to *Rule 65 of the Federal Rules of Civil Procedure* for a temporary

5   restraining order and, pending a hearing and determination of Global Entities'

6   motion, for preliminary injunction.  The temporary restraining order sought will

7   restrain Defendants, Mobile Motion, Inc. ("Mobile"), Doron Kim

8   ("Kim")("Mobile" and "Kim" shall hereafter be collectively referred to as

9   "Defendants") and E Dating For Free, Inc. ("E Dating") and will further apply

10   peripherally to the conduct of Google, Inc. Microsoft, Inc., Network Solutions,

11   LLC,  Tucows, Inc., Marchex, Inc. Rackspace, US, Inc., and Seyego, LLC

12   (collectively the "Peripheral Parties") as follows:

13        (1)    Defendants shall be prohibited from transferring the registration of,

14   assigning, selling, leasing, altering, relinquishing, injuring or otherwise making

15   changes to, in any manner, the existing registration of the Domain Names (117

16   "Domain Names" related to the sale and service of garage doors as defined in the

17   Complaint filed in this action) and identified within Exhibit B to the Complaint;

18        (2)    Defendants shall maintain the current Domain Name Registrations in

19   full force and effect and shall make no changes to the DNS information or IP

20   addresses associated therewith without a further order of this court.

21        (3)    Defendants shall be prohibited from accessing, altering, deleting

22   assigning, transferring, injuring, and/or destroying, in any manner, the Internet

23   Pay-Per-Click marketing accounts, campaigns, search terms and keywords

24   contained within the Google AdWords and Microsoft AdCenter accounts which

25   are identified as Exhibits C and D to the Complaint, respectively (hereafter PPC

26   Accounts").

27        (4)    Defendants shall be prohibited from making any changes to the any of

28

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

2

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1  the Websites to which the Domain Names (hosted by Rackspace, Inc.) currently

2  point (hereafter "Websites") including but not limited to company names, contact

3  information, phone numbers and addresses displayed thereon.

4      (5)   Defendants shall be prohibited from canceling, changing altering or

5  re-directing the phone numbers (maintained by Marchex, Inc.) associated with any

6  of the Websites to which the Domain Names are currently pointing (hereafter

7  "Phone Numbers").

8      (6)   That the Peripheral Parties, and each of them, take steps within their

9  respective control to maintain the current operation of the Domain Names,

10  Websites, Pay-Per-Click Campaigns and Phone Numbers and facilitate the other

11  orders of this court as set forth herein.

12      The Global Entities further move this Court to issue a preliminary injunction

13  pending the final hearing and determination on the merits as follows:

14      (1)   An Order that Defendants transfer the Domain Names, as identified in

15  Exhibit B to the Complaint, to Global Entities;

16      (2)   An Order transferring the control of the Pay-Per-Click marketing

17  accounts and search terms within those accounts at Google and Microsoft to the

18  Global Entities;

19      (3)   An Order transferring the control of the Phone Numbers (maintained

20  by Marchex, Inc.) associated with any of the Websites to which the Domain Names

21  are pointing to the Global Entities.

22      (4)   An Order enjoining Defendants from any further use of the Domain

23  Names, the Google AdWords and Microsoft AdCenter accounts belonging to the

24  Global Entities.

25  **OR, IN THE EVENT THAT THE COURT DOES NOT GRANT THE**

26  **ABOVE PRELIMINARY INJUNCTION TERMS THEN PLAINTIFFS**

27  **REQUEST IN THE ALTERNATIVE;**

28

COHEN &
RICHARDSON, PC
EL SECUNDO, California

EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION

An immediate preliminary injunction pending the final hearing and determination on the merits as follows:

(1)    Defendants shall be prohibited from transferring the registration of, assigning, selling, leasing, altering, relinquishing, injuring or otherwise making changes to, in any manner, the existing registration of the Domain Names (117 "Domain Names" related to the sale and service of garage doors as defined in the Complaint filed in this action) and identified within Exhibit B to the Complaint;

(2)    Defendants shall maintain the current Domain Name Registrations in full force and effect and shall make no changes to the DNS information or IP addresses associated therewith without a further order of this court.

(3)    Defendants shall be prohibited from accessing, altering, deleting assigning, transferring, injuring, and/or destroying, in any manner, the Internet Pay-Per-Click marketing accounts, campaigns, search terms and keywords contained within the Google AdWords and Microsoft AdCenter accounts which are identified as Exhibits C and D to the Complaint, respectively.

(4)    Defendants shall be prohibited from making any changes to the any of the Websites to which the Domain Names (hosted by Rackspace, Inc.) currently point including but not limited to company names, contact information, phone numbers and addresses displayed thereon.

(5)    Defendants shall be prohibited from canceling, changing altering or re-directing the phone numbers (maintained by Marchex, Inc.) associated with any of the Websites to which the Domain Names are currently pointing.

(6)    That the Peripheral Parties, and each of them, take steps within their respective control to maintain the current operation of the Domain Names, Websites, Pay-Per-Click Campaigns and Phone Numbers and facilitate the other orders of this court as set forth herein.

///

Cohen &
Richardson, PC
el Segundo, California

4

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

## Ground For Relief

It is essential that the Court issue the requested temporary restraining order to prevent immediate and irreparable injury and issue an Order to Show Cause hearing for a preliminary injunction because:

(1) The Global Entities would suffer immediate loss and damage before notice can be given and Mobile Motion and E Dating can be heard on a Motion for Preliminary Injunction.  In particular, as shown in Affidavits of Peter Stephens and Brandon Campbell and the Complaint filed in this action, Global Entities would suffer irreparable and immediate injury if immediate, emergency preliminary relief was not granted.  There is a substantial risk that upon notice of this claim and without such an order in advance, Defendants could unilaterally and immediately transfer, sell, or assign the Domain Names, alter the Websites,  alter the destination of the Phone Numbers and shut down and delete the contents of and/or transfer the Google AdWords or Microsoft AdCenter accounts. If this occurred, Global Entities would irreversibly lose control of the Domain Names forcing them to chase the names all over the world to recover them.  The Global entities would never be able to recreate the search terms in the Pay-Per-Click accounts held by Google and Microsoft and The Global Entities would irreparably lose a tremendous amount of business, income, and good will and a significant amount of its client base, which would be irreversibly detrimental to Global Entities' business and could be fatal to the Global Entities. Furthermore, if a temporary restraining order or a preliminary injunction freezing the names and accounts is not granted, Global Entities will remain exposed to potential litigation such as that raised in the "Atlanta Complaint" and the "San Diego Complaint" (as discussed below) which have already

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1      been brought as the result of Defendant's actions.

2   (2) The Global Entities' losses would be irreparable.  As explained in the

3      Affidavits of Peter Stephens and Brandon Campbell and the Complaint

4      filed in this action, Global Entities' injuries would be immediate and

5      irreparable for all the reasons stated above and because of Defendants'

6      and E Dating's relative ease of transferring the Domain Names and

7      canceling and/or transferring the Google AdWords and Microsoft

8      AdCenter accounts and/or deletion of the search terms contacted therein

9      to the permanent and irreparable loss of this information.  The Global

10     Entities and its' predecessors-in-interest have spent over $12 million

11     dollars since 2004 in furtherance of their Internet marketing efforts which

12     would all be lost without the present orders sought.

13  (3) There is no potential damage to Defendants as the result of the temporary

14     order sought. It seeks to maintain the status quo. Any potential injury to

15     the Defendants by the temporary restraining order sought could not

16     possibly counterbalance the irreparable injury to the Global Entities if

17     Defendants' conduct is not restrained as shown in the supporting

18     Affidavits of Peter Stephen and Brandon Campbell.  The balancing of the

19     equities in this case, in essence, is entirely in favor of Global Entities

20     because Defendants have no right, title or interest in the right to control

21     the Domain Names and the AdWords and AdCenter accounts.

22     Defendants have never paid for the Domain Names or any of the

23     AdWords and AdCenter search terms under such accounts.  The Domain

24     Names are the Trademarks of Global Entities only. Defendants are also

25     not in the business of selling overhead garage doors, have no right to the

26     Domain Names as Trademarks and would not suffer any hardship if a

27     temporary restraining order or preliminary injunction were granted.

28

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION

1

2 **Notice to Mobile Motion and E Dating – Extraordinary Circumstances**

3       Global Entities request for a temporary restraining order by way of *Ex Parte*

4 *Application*.  The Affidavit of counsel shows filed concurrently herewith

5 establishes the following necessary extraordinary facts that justify immediate,

6 emergency *Ex Parte* relief:

7   (1)   The likelihood of some effort by defendants to avoid the jurisdiction of this

8            court given the high value of the Domain Names, Websites, PPC Accounts

9            and Phone Numbers is significant.

10  (2)   The steps necessary to completely destroy Millions of dollars worth of

11           Defendants assets would take only second and virtually no effort or

12           expense.

13  (3)   The Global Entities stand to suffer grave consequences and irreparable

14           injuries if the Domain Names are not immediately ordered not to be

15           transferred. Should the Domain Names be transferred to third parties,

16           Global Entities would be forced to chase the Domain Names around the

17           world following transfer after transfer.

18  (4)   Global Entities would lose a significant amount of its market share,

19           business good will, brand and Internet marketing presence, if, upon

20           receiving notice of this application for a temporary restraining order, Mobil

21           Motion, Inc., Kim and E Dating For Free, Inc. assigned, transferred and/or

22           sold the Domain Names (as defined in the Complaint) and/or shut down or

23           deleted the search terms within the AdWords and AdCenter accounts or

24           altered the Websites or Phone Numbers.

25  (5)   If Global Entities were unable to use its Internet or marketing campaign,

26           Global Entities would be forced to downsize, thereby causing a significant

27           damage to Global Entities and its employees;

28

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

7

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

(6)   At the hearing on a preliminary injunction, the Global Entities will seek a preliminary injunction as set forth above.  Unless the restraining order is granted without notice, Defendants will easily be able to transfer, assign and/or sell the Domain Names and delete the AdWords and AdCenter accounts. This risk is immediate upon any notice to Defendants of Global Entities efforts to protect their rights herein. As such, the present TRO seeking a preservation of the status quo is necessary and a preliminary injunction granting the relief sought is appropriate.

This Application is based upon the Complaint on file in this action, the Certificate of Erik Velie, counsel for the Global Entities, the Affidavits of Peter Stephens and Brandon Campbell, the concurrently filed exhibits, the attached memorandum of points and authorities and on such additional oral and/or documentary evidence as may be presented at the time of the hearing of this application.

DATED:  March 7, 2011                    COHEN & RICHARDSON, PC

JEFFREY A. COHEN
jcohen@corichlaw.com
ERIK S. VELIE
evelie@corichlaw.com
Cohen & Richardson, PC
2321 Rosecrans Avenue, Suite 4210
El Segundo, California, 90245
(310) 469-9600 – Telephone
(310) 469-9610 – Facsimile
Attorneys for Plaintiff, Global Development
Strategies, Inc. and Global Distribution
Services, Inc.

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

# TABLE OF CONTENTS

## MEMORANDUM OF POINTS AND AUTHORITES

**I.    INTRODUCTION** .................................................................1

**II.   BACKGROUND / STATEMENT OF FACTS** ........................3

    **A.    Background of Global Entities** ...............................3

    **B.    The Agreement, the Assignments and Defendants'
    Willful and Bad Faith
    Representations**......................................4

    **C.    The Old Corporations' Assignment of Rights to
    GDS/Standing** ..................................................7

    **D.    Discovery of Breach and Willful Conversion** ........... 8

    **E.    Improper Domain Name Transfers to E-Dating
    and Private Transfers to Contactprivacy.com
    and Domains By Proxy, Inc** ....................................9

    **F.    Pending Litigation Matters** .................................11

    **G.    Substantial Loss of Market Share, Client Base and
    Good Will If Domain Names Transferred, Sold
    and/or Assigned By Defendants** ...........................13

**III.  LEGAL ARGUMENT** ...........................................15

    **A.    Standard of Review** ..........................................15

    **B.    The Global Entities Have An Overwhelming
    Likelihood of Success On the Merits Of Its' Claims** ........... 16

        *a.  Defendants' Breach of The Oral Contract* ................... 16

        *b.  Defendants' and E Dating's Willful and Bad Faith
        Conversion of Global Entities' Property Rights* ...................17

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

i

c. *Defendants' Violation of 15 U.S.C 1125(d)*
*(Anti-Cybersquatting Protection Act)* ………………………….. 18

**C.** **The Global Entities Will Suffer Irreparable and**
**Imminent Harm Unless This Court Grants This**
**Application for a TRO** …………………………………19

**D.** **The Balancing of the Hardships Favors Issuance**
**of a Temporary Restraining Order and Injunction** ………….. 21

**E.** **The Relief Sought is in the Best Interest of the Public** ……….. 22

**F.** **Ex Parte Relief Is Appropriate In Cases Of**
**Cybersquatting** …………………………………………23

**G.** **The Global Entities Should Not be Required to Post**
**a Bond** ………………………………………………… 24

**IV.** **CONCLUSION** ……………………………………………25

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

2

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amoco Production Co. v. Village of Gambell, Alaska,* 480 US 531 (1987) ........ 15

*Ashcroft v. American Civil Liberties Union,* 542 US 656 (2004) .................... 16

*Ayres v. City of Chicago,* 125 F3d 1010 (7th Cir. 1997) ............................. 21

*Caribbean Marine Services Co., Inc. v. Baldrige,*
844 F2d 668 (9th Cir. 1988) ……………………………………………….... 19

*Continental Oil Co. v. Frontier Refining Co.,*
338 F.2d 780 (10th Cir. 1964) …………………………………………… 24

*Dell, Inc. v. Belgiumdomains, LLC,* 2007 WL 6862341 (S.D. Fla. 2007) …........23

*Doctor's Assocs., Inc. v. Stuart,* 85 F3d 975 (2d Cir. 1996) …………….....… 24

*Doran v. Salem Inn, Inc.,* 422 US 922(1975) ………………………………… 19

*Freedom Holdings, Inc. v. Spitzer,* 408 F3d 112 (2nd Cir. 2005) …................. 19

*Grand River Enterprises Six Nations, Ltd. v. Pryor,*
481 F3d 60 (2nd Cir. 2007) ………………………………………………....19

*Haitian Refugee Center, Inc. v. Christopher,* 43 F3d 1431(11th Cir. 995) …....... 16

*Maryland Undercoating Co. v. Payne,* 603 F.2d 477 (4th Cir. 1977.)………….. 15

*Midgett v. Tri-County Metro. Transp. Dist. of Oregon,*
254 F3d 846 (9th Cir. 2001) …………………………………………....… 19

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F3d 1146 (9th Cir. 2007) …………… 16

*Reebok Intern. Ltd. v. Marnatech Enterprises, Inc.,* "
970 F3d 552 (9th Cir. 1992) ……………………………………………… 23

*Rent-A-Center, Inc. v. Canyon Television & Appliance,*
944 F3d 597(9th Cir. 1991) …………………………………....…… 20

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

i

**TABLE OF AUTHORITIES**

*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F2d 904 (2nd Cir. 1990) ........... 20, 21

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F3d 12 (1st Cir. 1996) .......16

*Scotts Co. v. United Industries Corp.* , 315 F3d 264 (4th Cir. 2002) ................ 21

*Sony Computer Entm't Am., Inc v. Gamemasters,*
87 F. Supp. 2d 976 (N.D. Cal. 1999) ........................................…......... 23

*Sotormans, Inc. v. Selecky*, 586 F3d 1109 (9th Cir. 2009) ………….....…... 22

*Stanley v. University of So. Calif.*, 13 F3d 1313 (9th Cir. 1994) ……....…......15

*Starlight Sugar, Inc. v. Soto*,114 F3d 330  (1st Cir. 1997) ……………….. 21

*Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co. Inc.,*
240 F3d 832 (9th Cir. 2001) ...........................................…........ 20

*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.,*
60 F3d 27 (2nd Cir. 1995) ..................................................... 21

*United States v. First Nat'l City Bank,*
379 US 378, 85 S.Ct. 528  (1965) ................................... 22

*United States ex rel. Rahman v. Oncology Assocs., P.C.,*
198 F3d 489 (4th Cir. 1999) ...........................................…..... 22

*West Virginia Highlands Conservancy v. Island Creek Coal Co.,*
441 F.2d 232 (4th Cir. 1971.) .......................................... 24

*Winter v. Natural Resources Defense Counsel, Inc.,*
US, 129 S. Ct. 365 (2008) …………………………………....……...15, 19, 22

## STATE CASES

*de Vriesv.Rumback* (1960) 53 Cal.2d 643 ...............................17

*Scott v. Security Title ins.and guar.co.* (1937) 9 Cal2d 606 ……....……....... 16

*Wienberger v. Romero-Barcelo* (1982) 456 US 305 ...............................15

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

## **FEDERAL STATUTES**

15 U.S.C. § 1125(d) ................................................................ 18, 19
15 U.S.C. §1125(d)(1)(a) ..............................................……18
15 U.S.C. §1125(c)(2)(A) ..............................................…...19
18 U.S.C. §706 ................................…....................................18

## **FEDERAL RULES**

Fed. R. Civ. P. 65 ...............................................….............. 2

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

1

**FEDERAL STATUTES**

# STATE STATUTES

California Civil Code §1515 ............................................................…................ 16

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

1

## I.   MEMORANDUM OF POINTS AND AUTHORITES

### INTRODUCTION

The Global Entities Entities ("Global Entities") and its predecessors-in-interest entered into an oral agreement with Defendants, Internet marketing consultants, to perform certain Internet marketing work in September of 2003.  As part of the agreement, the parties agreed that Defendants would register Domain Names, create Websites, establish and manage PPC Accounts and reserve and implement phone numbers for Global entities and its predecessors-in-interest. All domain names, intellectual property, and Pay-Per-Click search terms under any marketing campaigns would be registered and/or owned by the Global Entities and its predecessors-in-interest.

After the oral agreement was formed, Defendants willfully and unlawfully registered the Domain Names (identified below) in Mobile Motion, Inc.'s own name, instead of Global Entities and its predecessors-in-interest. The expense for the registration was wholly paid for by Global Entities and its predecessors-in-interest and was charged directly to credit cards of the Global Entities. Defendants further willfully and unlawfully set up Pay-Per-Click accounts through Microsoft AdCenter and Google AdWords in Mobile's name and have denied Global Entities and its predecessors-in-interest access to such accounts and the intellectual property contained therein (i.e. marketing campaign information and key words to obtain customers).  Defendants have set up Websites and have arranged for Phone Numbers to be implemented for display upon the Websites of the Global Entities to be directed to call centers maintained by Plaintiffs.

In September of 2010, Global Entities discovered that Defendants had improperly registered the Domain Names and set-up the Ad Word and AdCenter accounts in violation of the oral agreement and immediately demanded (and numerous times thereafter) a transfer of the Domains to Global Distribution Services, Inc. and access to the AdWords and AdCenter accounts.  Instead of

COHEN &
RICHARDSON, PC
. SEGUNDO, CALIFORNIA

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1   complying with such requests, on information and belief, Defendant Mobile
2   Motion transferred some the Domain Names to Defendant E Dating, in order to
3   willfully and intentionally deceive Global Entities from obtaining disclosing this
4   fraudulent conduct and securing their rights with respect to the registration of such
5   domain names by Plaintiffs.

6       Additionally, on information and belief, Global Entities has determined that
7   E Dating has, in turn, placed some the E Dating domain names (as identified
8   below) into a private domain registration company "contactprivacy.com" in a
9   further attempt to hide the true registrant of the Domain Names from Global
10  Entities.

11      Global Entities have used the Trademarks associated with the Domain
12  Names since 2003, and the Trademarks contained within the Domain Names are
13  widely recognized by the general consuming public of the United States as a
14  designation of the Global Entities source of services as a garage door installation
15  service and repair company for residential and commercial consumers.  The marks,
16  Domain Names, AdCenter and AdWords accounts account for over thirty seven
17  million dollars ($37,000,000) in sales since 2004. Because Defendants have in bad
18  faith registered the Domain Names and have refused to transfer the Domain Names
19  to Global Entities and because Defendants willfully and improperly set up the
20  AdCenter and AdWords accounts and have refused access to the accounts to the
21  Global Entities, Global Entities and filed this action and have immediately filed
22  this Application for *Ex Parte* relief in the form of a Temporary Restraining Order
23  to enjoin Defendants from transferring, altering, destroying and/or making changes
24  to the Domain Names, AdCenter and AdWords accounts and to require them to
25  continue to maintain the Domain Names, PPC Accounts, Websites and Phone
26  Numbers in their current working order pending a further order of this court.

27      If the temporary relief is not granted, Global Entities will suffer irreparable
28  and imminent harm, particularly with respect to a loss of Jurisdiction and control

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

2

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1  of the Domain Names as well as irreparable damage to its client base, market share

2  and good will, if Defendants are not enjoined from selling, assigning, transferring,

3  making changes to and/or destroying the Domain Names and AdCenter and

4  AdWords accounts.  The damages to Plaintiffs would be so severe as to be

5  potentially fatal to Plaintiffs as a company and would cause dollar losses well into

6  the multiple millions of dollars.

7         Accordingly, Global Entities' *Ex Parte* Application for a Temporary

8  Restraining Order and an Order to Show Cause regarding Preliminary Injunction

9  must be granted.

10 **II.    BACKGROUND / STATEMENT OF FACTS**

11      **A.    Background of Global Entities**

12         The Global Entities are national leaders in the industry of selling and

13 installing overhead garage doors for residential and commercial consumers. The

14 Global Entities currently gross over $20 million dollars annually.  (*See Affidavit of*

15 *Peter Stephens (the "Stephens Affid."),* ¶17.)  A substantial amount of Global

16 Entities' revenue is generated by marketing efforts on the Internet. (*Ibid.*)  The

17 Defendants' work for Global Entities is with respect to the Internet marketing

18 activities of Global Entities. (*Id. at* ¶18).   Currently, Global Entities have various

19 domain names, websites and marketing campaigns on the Internet, including Pay-

20 Per-Click[1] advertising accounts with Google (AdWords), Google places and

21 Microsoft (AdCenter), which are currently, until recently unknown to Global

22 Entities, improperly being held in the name of Defendants.  (*Ibid.*)

23         Prior to the formation of the Global Entities, Peter Stephens, Global Entities'

24 sole shareholder, was and/or still is the sole shareholder and president of several

25

26 [1]  Pay-Per-Click: A marketing program where text or other advertisements are displayed
   in the Internet, typically at the top of search engine results, based on specific search terms
27 entered by the potential customer. Advertisers then pay the sponsoring search engine (i.e.
   Google, Yahoo or Bing) based on the number of click-throughs to their website. These
28 listings are generally separated from the organic listings by a designation such as
   "Sponsored Listing".

corporations throughout the United States, all of which are engaged in the business of selling and installing overhead garage doors to commercial and residential consumers (collectively, the "Old Corporations"). (*Stephen Affid.*, ¶¶ 2, 19.)

**B.** **The Agreement, the Assignments and Defendants' Willful and Bad Faith Representations.**

On or around September of 2003, in order to market the Old Corporations, Mr. Stephens entered into an agreement (the "Agreement") as president of the Old Corporations with Defendants to provide Internet marketing services. (*Stephen Affid.*, ¶ 22.) In exchange for Defendants' services, the Old Corporations agreed to pay Defendants a fee (as described below). (*Ibid.*)

Under the terms of the Agreement, the Old Corporations and Defendants agreed that:

(1) Defendants would provide Internet marketing activities for the Old Corporations in furtherance of the Old Corporations' Internet marketing campaigns, including but not limited to servicing of the Old Corporations' websites, Pay-Per-Click advertising campaigns, search engine optimization and domain name registration (the "Internet Operations");

(2) in exchange for these services, the Old Corporations would pay Defendants a monetary commission of a percentage of the amount of revenue the Old Corporations received through the Internet Operations;

(3) the Old Corporations would receive the exclusive right, ownership and/or right to use of any and all Domain Names, Websites, Pay-Per-Click accounts, and Phone Numbers set up in conjunction with this work;

(4) the Old Corporations would have the exclusive right to control any and all domain names registered by Defendants. Defendants would

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

use the Old Corporations' credit cards (as set forth below) to register any and all domain names registered in furtherance of the Internet Services.

(5) all services, fees, charges and other expenses related to registering domain names, the websites, hosting and maintaining Pay-Per-Click search terms purchased under such accounts for the Internet marketing campaign would all be paid directly for and would be for the exclusive benefit of the Old Corporations or their successors in interest; and

(6) the Agreement could be terminated at any time by either party. (*Stephen Affid.*, ¶ 24.)

In reliance upon the Agreement and Defendants' representations, Global Entities and its predecessors-in-interests provided Defendants with various corporate credit cards (the "Credit Cards") and authority to use the same in order to perform the Internet Services and to register domain names and the Pay-Per-Click accounts in each respective Old Corporations' name, of which such rights have now been assigned to Global Entities. (*Stephen Affid.*, ¶ 15.) Global Entities and its predecessors-in-interest entrusted the Credit Cards to Defendants to comply with the Old Corporations' obligations under the Agreement and to allow Defendants to meet its obligations under the Agreement. (*Id.*)

Upon receipt of the Credit Cards, Defendants intentionally, willfully and fraudulently purchased and registered one hundred and seventeen (117) domain names (the "Domain Names") in Mobile Motion's name (instead of the Old Corporations and/or Global Entities) which were lawfully to be registered to Global Entities in breach of the Agreement. (*Stephen Affid.*, ¶ 26, Exhibit C; *See Affidavit of Brandon Campbell ("Campbell Affid.")*, ¶¶ 13, Exhibits A.) On information and belief, since 2003, Defendants (in addition to the unlawful transfers to third parties as set forth below), in breach of the Agreement, willfully

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1   and intentionally renewed and re-registered the Domain Names annually in Mobile

2   Motion's name, thereby depriving Global Entities of their contractual rights to

3   register the Domain Names under the Agreement. (*Stephen Affid.,* ¶26, Exhibit C.)

4         In addition to the Domain Names, Defendants also used the Credit Cards to

5   intentionally, willfully and unlawfully register various Google AdWords

6   ("AdWords") Pay-Per-Click accounts and various Microsoft AdCenter

7   ("AdCenter") Pay-Per-Click accounts in the name of Mobile Motion instead of the

8   Old Corporations and/or Global Entities for the purported benefit of Global

9   Entities. (*Stephen Affid.,* ¶¶ 26- 27, Exhibit C and D; *See Campbell Affid.,* ¶¶ 14-15

10  Exhibit B and C.) Hereby preventing Global Entities from leaving what search

11  terms have been purchased and other information about the account. (*Stephen*

12  *Affid.,* ¶ 27.) Since demanding access to the AdWords and AdCenter accounts on

13  and after September of 2010, Defendants have refused to transfer the Domain

14  Names to Plaintiff and have denied Global Entities' access and use of the

15  AdWords and AdCenter accounts and Pay-Per-Click keywords in breach of the

16  Agreement. (*Stephen Affid.,* ¶ .29)

17        In addition to Defendants' unlawful purchases above, on information and

18  belief, Defendants used the Credit Cards for personal and business expenses

19  unrelated to Defendants' obligations under the Agreement.  In fact, on information

20  and belief, Defendants have used the Credit Cards for purchases of goods and

21  services unrelated to the Agreement. (*Stephen Affid.,* ¶27.)

22        On or about September of 2010, Global Entities discovered that Defendants

23  registered and continue to renew the Domain Names in Mobile Motion's name

24  instead of Global Entities and that the AdWords and AdCenter accounts were in

25  the name of Mobile Motion instead of Global Entities and that Global Entities were

26  prevented from having any access to these accounts. (*Stephen Affid.,* ¶ 32.)

27        The Global Entities were unaware of Defendants' improper

28  misappropriation of the right to register the Domain Names and the AdWords and

AdCenter accounts as it entrusted its full faith and confidence in Defendants to comply with their obligations under the Agreement and to use the Credit Cards for the sole purpose of furthering Global Entities' marketing campaigns under the Agreement. (*Stephen Affid.*, ¶33.)

Since discovery, on or about November 17, 2010, and various times thereafter, Global Entities requested that Kim immediately transfer the Domain Names to Global Entities. (*Stephen Affid.*, ¶ 34.)  In fact, on November 17, 2010, Marlene Stephens, CEO of Global Entities and corporate manager for Global Entities, provided Defendants with a written demand that Global Entities transfer the Domain Names. (*Stephen Affid.*, ¶ 34, Exhibit E.)  However, since the date of the November 17, 2010 request, Defendants have refused and continue to refuse to transfer the Domain Names to Plaintiff. (*Id.*)

On or around November of 2010 and numerous times thereafter, Global Entities, in addition to requesting a transfer of the Domain Names, requested that Defendants transfer the AdWords and AdCenter marketing campaigns to the Global Entities' accounts as required under the Agreement. (*Stephen Affid.*, ¶ 37.) Notwithstanding the request, Defendants have failed to transfer and have refused to make such transfers as of the date of this Affidavit. (*Id.*)

## C.    <u>The Old Corporations' Assignment of Rights to GDS/Standing</u>

On July 1, 2008, each of the Old Corporations assigned (the "Assignments") all of its' assets and contractual rights and obligations to Global Entities, including but not limited to the Old Corporations' rights and obligations under the Agreement (defined below). (*Stephen Affid.*, ¶ 20.)

Immediately, after the Assignments occurred, Defendants were put on notice of the Assignments and continued to perform their obligations under the Agreement with Global Entities as if Global Entities was the original party to the Agreement. (*Stephen Affid.*, ¶ 21). In fact, Mobile Motion, Inc. has routinely and continually accepted payment from Global Entities in exchange for the Internet

Services as set forth below. (*Id.*) The most recent payments received by Defendants from Global Entities are in the form of checks dates January 31, 2011, and January 29, 2010, respectively. (*Stephen Affid.,* ¶ 21, Exhibit B.) Global Entities are the appropriate parties with standing to bring the present action and to maintain the resolution of the Domain Names going forward.

### D. <u>Discovery of Breach and Willful Conversion</u>

On or around September of 2010, Global Entities discovered that Defendants registered and continued to renew the Domain Names in Mobile Motion's name and that the AdWords and AdCenter accounts were in the name of Mobile Motion. (*Stephen Affid.,* ¶ 32).

Global Entities was unaware of Defendants' improper misappropriation of the right to register the Domain Names and the AdWords and AdCenter accounts as it entrusted its full faith and confidence in Defendants to comply with their obligations under the Agreement and to use the Credit Cards for the sole purpose of furthering Global Entities' marketing campaign under the Agreement. (*Stephen Affid.,* ¶ 33).

Since discovery, on or about November 17, 2010, and various times thereafter, Global Entities requested that Kim immediately transfer the Domain Names to Global Distribution Services, Inc.'s Network Solutions Account. (*Stephen Affid.,* ¶ 34.) In fact, on November 17, 2010, Marlene Stephens, a corporate manager for Global Entities, provided Defendants with a written demand to transfer the Domain Names. (*Stephen Affid.,* ¶ 34, Exhibit E.) However, since the date of the November 17, 2010 request, and despite numerous verbal requests thereafter, Defendants have refused and continued to refuse to transfer the Domain Names. (*Id.*)

On or around November of 2010, and numerous times thereafter, Global Entities, in addition to requesting a transfer of the Domain Names, requested that Defendants transfer the AdWords and AdCenter marketing campaign to Global

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1   Entities' accounts as required under the Agreement. (*Stephen Affid.*, ¶ 37.)

2   Notwithstanding, Defendants have failed to transfer and refused to make such

3   transfers as of the date of this Application. (*Id.*)

### E. Improper Domain Name Transfers to E-Dating and Private Transfers to Contactprivacy.com and Domains By Proxy, Inc.

6   Upon information and belief and after conducting Internet WHOIS research

7   the Global Entities learned that Mobile Motion, after learning that Global Entities

8   was demanding the right to register the Domain Names and/or in anticipation of

9   such demand, began to transfer the following domain names to a third party to

10  prevent Global Entities from obtaining the right to register the following domains:

11      (1) overheadgaragedoors.com;

12      (2) fortworthoverheaddoors.com;

13      (3) atlanta-garage-door-repair.com;

14      (4) bouldergaragedoorrepair.com;

15      (5) denvergaragedoorrepair.com;

16      (6) dallas-garage-door-repair.com;

17      (7) garagedoorrepairfortworth.com;

18      (8) houtson-garage-door-repair.com;

19      (9) irvine-garage-door-repair.com;

20      (10) minneapolis-garage-door-repair.com;

21      (11) orangecounty-garage-door-repair.com;

22      (12) orlando-garage-door-repair.com;

23      (13) phoenix-garage-door-repair.com;

24      (14) sacremento-garagedoorrepair.com;

25      (15) garagedoorrepairstpaul.com;

26      (16) sandiego-garage-door-repair.com;

27      (17) sanantoniogaragedoorrepair.com;

28      (18) seattlegaragedoorrepair.com;

COHEN &
RICHARDSON, PC
L SEGUNDO, California

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1     (19) sanjosegaragedoorrepair.com;

2     (20) tampagaragedoorrepair.com; and

3     (21) charlotte-garage-door.com.

4    (Collectively "E Dating Domains") (*Campbell Affid.*, ¶ 29).

5    Upon information and belief, in a further attempt to hide the true registrant

6 of the Domain Names from Global Entities to prevent Global Entities from

7 recovering its right to register the Domain Names, Defendants willfully registered

8 domains (3)-(21) (the "Private E Dating Domains"), as identified above, utilizing a

9 private registration intended to hide the identity of the registrant known as

10 "Contactprivacy.com", which offers these "privacy" services. (*Stephen Affid.*, ¶

11 30).  It is Global Entities position that the private registration is intended to keep

12 the details of the registrant of a domain name private and instead name the private

13 registration company as the registrant (i.e. Contactprivacy.com). (*Campbell Affid.*,

14 ¶30.)

15    Although Contactprivacy.com is currently named as the registrant for each

16 of the Private E Dating Domains, on information and belief from conducting a

17 WHOIS search on  networksolutions.com/whois-search, Global Entities believes

18 that the true registrant of each of the Private E Dating Domains is E Dating.

19 (*Campbell Affid.*, ¶¶ 31-33).  Particularly, because the contact address for the

20 registrant with respect to each of the Private E Dating Domains is the business

21 address for E Dating. (*Campbell Affid.*, ¶ 31.) Plaintiff, in conjunction with this

22 application seeks expedited discovery to recall the true registrants of these Domain

23 Names. Freezing them from any further transfers is obviously imperative prior to

24 service of any such subpoena or other discovery.

25    Upon further information and belief from conducting a WHOIS search on

26 networksolutions.com/whois-search,  Defendants  also  procured  a  private

27 registration company named Domains By Proxy, Inc. to hide the registrant

28 information for some of the Domain Names.  (*Campbell Affid.*, ¶ 34.) These

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

domains are identified as follows: (1) sacramento-garage-door.com; (2) charlotte-garage-door.com; (3) dallas-garage-doors.com; (4) houston-garage-door.com; (5) sanantonio-garage-door.com; (6) atlanta-garage-door.com; (7) austin-garage-door.com; (8) boston-garage-door.com; (9) columbusgaragedoor.com; (10) lasvegas-garage-door.com; (11) losangeles-garage-door.com; (12) louisvillegaragedoor.com; (13) miami-garagedoors.com; (14) milwaukee-garage-doors.com; (15) minneapolis-garage-door.com; (16) omaha-garage-door.com; (17) orlando-garage-door.com; (18) philadelphia-garage-door.com; (19) phoenix-garage-door.com; (20) renogaragedoor.com; (21) sacramento-garage-door.com; (22) sanantonio-garage-door.com; (23) sanjose-garage-door.com (collectively, the "Other Private Domains.") (*Id.*)   Upon information and belief, Global Entities believes that the current registrant of each of the Other Private Domains is Defendants. (*Campbell Affid.*, ¶35.) The orders sought also seek the freezing of these Domain Names and disclosure of the identity of the true registrant which we believe to be Defendants.

## F.   <u>Pending Litigation Matters</u>

On May 19, 2010, Global Distribution Services, Inc. and its president and sole share holder, Peter Stephens,  were named as defendants in a litigation matter entitled *D.H. Pace Company, Inc. v. Global Distribution Services, Inc.*, identified as Civil Action No. 1:10CV1524 (the "Atlanta Complaint") in the United States District Court for the Northeastern District of Georgia Atlanta Division. (*Campbell Affid.*, ¶ 36.)  The Atlanta Complaint alleges, among other things, that Global Distribution Services, Inc. and Mr. Stephens engaged in unfair competition under the Trademark Act of 1946, as amended 15 U.S.C. § 1051, *et seq.* ("Lanham Act"), for deceptive trade practices under the Georgia Uniform Deceptive Trade Practices Act., O.C.G.A. § 10-1-370, *et seq* (2007), and for unfair competition in violation of *O.C.G.A.* § 23-2-55 (2007) for improperly (1) using a domain name entitled  atlantaoverheaddoor.com, which is alleged to be confusingly similar to

*D.H. Pace's* overheaddooratlanta.com and for (2) engaging in fraudulent and improper Search Engine Optimization techniques. (*Campbell Affid., ¶ 38.*, Exhibit I.) These are tasks engaged in by Defendants herein which Global Entities cannot prevent without control of the subject Domain Names. Prior to the lawsuit, Global Entities were unaware of any improper or illegal conduct of the Defendants.

Moreover, on September 23, 2010, Global Development Strategies, Inc. was named as a Defendant in an action filed in the Superior Court of California – San Diego entitled *Lance Spry v. Global Development Strategies, Inc.*, identified as Case No. 37-2010-00100874-CU-BT-CTL (the "San Diego Complaint"). (*Campbell Affid.*, ¶¶ 39, 41 and Exhibit J.)   The San Diego Complaint alleges, among other things, that Global Development Strategies, Inc. misappropriated Spry's Overhead Garage Doors name by "providing Google with "AdWords" and "keywords" which include SPRY'S business names and likeness. (*Campbell Affid., ¶40.*)  A Google search for "Spry's Garage Doors" will result in a top sponsored link entitled "Spry's Overhead Doors" which, when followed, takes the potential client not to Spry's website, but to Global's website." (*Id.*) As a result of the above referenced alleged activity, Lance Spry, dba Spry's Overhead Garage Doors has sued Global Development Strategies, Inc. for (1) misappropriation of name; (2) violation of B&P § 17200; violation of common law right of publicity; and (4) violation of statutory right to publicity California Civil Code section 3344. (*Campbell Affid., ¶ 41 at Exhibit J.*)

At all times alleged under the Atlanta Complaint and San Diego Complaint, Global Entities were unaware of any wrongful conduct on the part of Defendants, including but not limited to search engine optimization techniques, Pay-Per-Click advertising and management of Global Entities' websites and domain names. (*Campbell Affid., ¶ 42.*) These cases allege that Defendants were using Domain

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1  Hijacking and Domain Squatting[2] techniques in order to obtain a favorable search

2  ranking on search sites such as Google, Bing and Yahoo by using the Domain

3  Names, AdWords and AdCenter accounts. (*Campbell Affid., ¶43.*)

4       In order to avoid any further litigation in the face of Defendants refusal to

5  turn over the Domain Names and PPC Accounts, and in the face of immediate and

6  irreparable harm to Global Entities and to the consumer (the public), Global

7  Entities need to immediately prevent Defendants from transferring Domain Names,

8  making any changes to the websites, AdWords and AdCenter accounts. (*Campbell*

9  *Affid.*, ¶ 44.)  The present orders are necessary in order to prevent further litigation

10  and unlawful activity that may have a substantial impact on Global Entities'

11  business and the public's ability to locate its consumer.  (*Campbell Affid.*, ¶ 45.)  It

12  is imperative that the Court grant temporary preliminary and permanent relief to

13  prevent Defendants from transferring or otherwise disposing and/or altering the

14  Domain Names and AdWords and AdCenter accounts to prevent any further

15  unlawful Internet practices that may be occurring as alleged in the Atlanta and San

16  Diego Actions and/or that may be occurring under any of the other Domain Names

17  and AdCenter and AdWords accounts. (*Id.*)

18      **G.**    **Substantial Loss of Market Share, Client Base and Good Will If**

19          **Domain Names Transferred, Sold and/or Assigned By**

20          **Defendants.**

21       For the past 12 years, Global Entities and its predecessors-in-

22  interest have been engaged in the business of offering quality garage door

23  services and repairs to commercial and residential consumers. (*Stephen Affid.*, ¶

24  38). Global Entities employ a staff of approximately 104 individuals throughout

25  the United States. (*Id.*)

26       Over the past eight (8) years, substantial advertising and promotion has been

27

28  [2] Domain Hijacking or Domain Squatting: the act of trafficking in, or using a domain name with bad faith intent to profit from the goodwill of a trademark belonging to someone else.

13

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1  invested in Internet marketing and for the marks used for each of the Domain
2  Names. (*Stephen Affid.*, ¶¶ 39 - 40; Exhibit G.)  In fact, since March of 2007,
3  Global Entities have spent in excess of $6,000,000 on Internet advertising and
4  cost/call maintenance related to leads received from phone numbers identified on
5  the Global Entities various websites. (*Stephen Affid.*, ¶ 40, Exhibit G.)

6          Global Entities and its predecessors-in-interest have used the marks
7  identified within each of the Domain Names to create a brand and to use its trade
8  names to obtain business. (*Stephen Affid.*, ¶ 41).  Global Entities and its
9  predecessors-in-interest have also used the AdWords and AdCenter accounts to
10  promote the Global Entities' Domain Names and websites, which are significantly
11  valuable to Global Entities. (*Id.*)  Global Entities' Pay-Per-Click advertising
12  campaigns, which they are currently locked out of by Defendants, are also a
13  significant source of Global Entities' marketing campaigns and revenue on the
14  Internet. (*Id.*)

15          Global Entities' sales throughout the United States exceeded $23 million in
16  2010 and $24 million in 2009. (*Stephen Affid.*, ¶ 42).  A significant portion of
17  Global Entities sales are a direct result of Global Entities Internet marketing. (*Id.*)
18  In the event Defendants unilaterally transfer, sell, or assign the Domain Names or
19  make any other changes thereto or to the websites associated therewith or shut
20  down or delete any search terms from the AdWords and AdCenter accounts Global
21  Entities will lose a substantial market share of the overhead garage door services
22  and repair industry. (*Id.*)  Global Entities will be irreparable financially damaged
23  and will also lose a tremendous amount of good will and a significant amount of its
24  client base, which would be potentially fatal to the Global Entities business. (*Id.*)
25  Accordingly, it is imperative that a temporary restraining order and preliminary
26  injunction immediately be put in place to prevent the sale, transfer and assignment
27  of the Domain Names and the deletion of any search terms within AdWords and
28  AdCenter accounts throughout the pendency of this litigation. (*Id.*)

COHEN &
RICHARDSON, PC
L SECUNDO, CALIFORNIA

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

# III.   LEGAL ARGUMENT

## D. Standard of Review

"The basis for injunctive relief (temporary, preliminary or permanent) in the federal courts has always been *irreparable injury* and the *inadequacy of legal remedies.*" (*Wienberger v. Romero-Barcelo* (1982) 456 US 305, 312; *Stanley v. University of So. Calif.* (9th Cir. 1994) 13 F3d 1313, 1320.) "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." (*Amoco Production Co. v. Village of Gambell, Alaska* (1987) 480 US 531, 542.)

Courts in this circuit weigh four factors in determining whether to grant emergency injunctive relief: (1) the plaintiff's likelihood of success on the merits; (2) the prospective irreparable harm to the plaintiff if relief is withheld; (3) the potential harm to the other party if relief is granted; and (4) the interest in the public. (*Winter v. Natural Resources Defense Counsel, Inc.* (2008) US, 129 S.Ct. 365, 374; *Amoco Prod. Co. v. Village of Gambell, Alaska* (1987) 480 US 531, 542, 107 S. Ct. 1396, 1402.) A strong showing of a likelihood of irreparable injury substantially lessens the Global Entities' need to demonstrate the likelihood of success on the merits. (*Maryland Undercoating Co. v. Payne*, 603 F.2d 477, 481 (4th Cir. 1977.) The strong likelihood of success on the merits likewise reduces the need to meet the other requirements. (*Id.*)

In this case, as set forth below, an emergency temporary restraining order and a preliminary injunction are both necessary and appropriate because the Global Entities have a strong likelihood of prevailing on its claims and would suffer imminent and irreparable harm if such interim relief were to be denied. Defendants, in contrast, will not be harmed by the issuance of the requested temporary restraining order and preliminary injunction, and this relief will best serve the public interest. Accordingly, the Global Entities' Application for a Temporary Restraining Order and an Order to Show Cause regarding a Preliminary

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

15

1  Injunction must be granted.

2      The TRO seeks nothing more than to maintain the status quo and prevent the

3  Defendants from causing willful damage to Global Entities in retaliation for

4  bringing the present claim. The orders sought are thoughtfully limited to as little as

5  is necessary to achieve that goal.

6      **E.  <u>The Global Entities Have An Overwhelming Likelihood of</u>**

7      **<u>Success On the Merits Of Its' Claims.</u>**

8      To obtain a preliminary injunctive relief, the Global Entities must show that

9  it is "likely" to prevail on the merits.  (*Ashcroft v. American Civil Liberties Union*

10  (2004) 542 US 656, 665, 124 S. Ct. 2783, 2791; *Haitian Refugee Center, Inc. v.*

11  *Christopher* (11th Cir. 995) 43 F3d 1431, 1432; *Ross-Simons of Warwick, Inc. v.*

12  *Baccarat, Inc.* (1st Cir. 1996) 102 F3d 12, 16.)  The burdens at the preliminary

13  injunction stage "track the burdens at trial."  Thus, once the moving party has

14  carried its burden of showing a likelihood of success on the merits, the burden

15  shifts to the nonmoving party to show likelihood that its affirmative defense will

16  succeed. (*Perfect 10, Inc. v. Amazon.com, Inc.* (9th Cir. 2007) 508 F3d 1146,

17  1158.)

18      *a.    <u>Defendants' Breach of The Oral Contract</u>*

19      A contract is enforceable if it satisfies the requirements for a contract

20  pursuant to California Civil Code §1515. There must be parties capable of

21  contracting, consent to the agreement, a lawful object and a sufficient cause for

22  consideration. Here, Defendants and Global Entities were clearly capable of

23  forming an agreement and did so for the purposes of obtaining and providing

24  Internet marketing services in exchange for compensation. Under the terms of the

25  agreement, Defendants had a duty and obligation to register the Domain Names to

26  Global Entities and to set up the AdWords and Ad Center accounts so they could

27  be accessed by Global Entities. (See *Scott v. Security Title ins.and guar.co.* (1937)

28  9 Cal2d 606,614.)

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

16

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

Defendants breached its duties and obligations under the agreement when it registered the Domain Names in Mobile Motion, Inc.'s name and registered the AdWords and Ad Center accounts in Mobile Motion, Inc.'s name and in such a manner as to prevent it from accessing the accounts. Defendants further breached the agreements when they failed to transfer the Domain Names, AdWords and Ad Center accounts to Global Entities on November 17, 2010 and numerous times thereafter despite repeated demands being made by Global Entities. Accordingly, Defendants are clearly in breach of its legal obligations under agreement of which the law supplies a remedy. Therefore, there is an overwhelming likelihood of success that Global Entities will be successful on its breach of contract claims against Defendants.

   b.    *Defendants' and E Dating's Willful and Bad Faith Conversion of Global Entities' Property Rights.*

   In addition to the breach of contract claim, Global Entities have an overwhelming likelihood of success on the merits of a conversion claim. Conversion is defined as an act of willful interference with personal property, done without lawful justification, by which any person entitled thereto is deprived of the use and possession of the personal property. (de Vriesv.Rumback (1960) 53 Cal.2d 643, 647) As set forth under the terms of the Agreement, Global Entities clearly have a legal right to register the Domain Names and to the AdWords and Ad Center accounts. Defendants willfully and intentionally interfered with these property rights by unilaterally registering the Domain Names and setting up the Ad Center and AdWords accounts in Mobil Motion's name without Global Entities' authority thereby converting the same for Defendants' use. Furthermore, Defendants continued to assert such dominion and control over the Domain Names, AdWords and Ad Center accounts by reregistering and re-accessing such accounts without transferring the same to Global Entities.

   In addition, after learning that Global Entities were demanding the right to

COHEN & RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

17

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

register the Domains, Defendants willfully and intentionally interfered and converted Global Entities property rights in the Domain Names by transferring the E Dating Domains, including the Private E Dating Domains, to E Dating thereby converting the same to E Dating's use. Accordingly, Defendants have unlawfully converted Global Entities' property rights. Because no adequate remedy exists in law for the injuries suffered by Global Entities, Global Entities are entitled to injunctive relief.

c.      _Defendants' Violation of 15 U.S.C 1125(d).(Anti-Cybersquatting Protection Act)_

An owner of a mark may bring a cause of action against a Domain Name registrant who (1) has a bad faith intent to profit from the mark and (2) registers, traffics in, or uses a Domain Name that is (a) identically or confusingly similar to a distinctive mark, (b) identically or confusingly similar to or dilutive of a famous mark, or (c) is a trademark protected by 18 U.S.C. §706. (15 U.S.C.§1125(d)(1)(a).)

As set forth above, Defendants violated 15 U.S.C. 1125(d) by registering and renewing annually the Domain Names in Mobile Motion's name and using the Domain Names from the date of the agreement until present. Defendants willfully and intentionally misrepresented the true owner of the Domain Names at the time it registered the Domains and during the entire period it used the Domain Names with a bad faith intent and with the objective of withholding the Domain Names from Global Entities so that they could profit from the Domain Names.

Particularly, Defendants registered the Domain Names with the sole purpose of preventing Global Entities from seeking other venders to provide competitive marketing services to Global Entities, thereby allowing Defendants to secure a superior bargaining position to the point of extortion and steal additional profits under the agreement. On information and belief, Defendants further registered the Domain Names with a bad faith intent to sell and/or exchange the domain names

with Global Entities after the agreement was terminated. Global Entities believe it is the intent of Defendants at all times herein to offer the Domain Names to Global Entities' competitors to the severe and irreparable damages to it.

The marks contained within each of the Domain Names are famous marks which are widely recognized by the general consuming public of the United States as a designation of the Global Entities source of services. (15 U.S.C. 1125(c)(2)(A).) The marks are famous and have been in use as a service mark for the Global Entities' and its predecessors-in-interests' businesses since 2003. Accordingly, Defendants are in violation of the Anti-Cybersquatting Protection Act as set forth within 15 U.S.C. 1125(d), and therefore, Global Entities are entitled to a temporary restraining order and preliminary injunction prior to judgment being rendered in this matter at a minimum freezing any transfer of the Domains until a determination at the hearing on preliminary injunction or further immediate transfer of the Domain Names to it.

## F. __The Global Entities Will Suffer Irreparable and Imminent Harm Unless This Court Grants This Application for a TRO.__

Global Entities must demonstrate that an irreparable injury is likely in the absence of an injunction. (*Winter v. Natural Resources Defense Counsel, Inc.* (2008) US, 129 S. Ct. 365, 375; *See Freedom Holdings, Inc. v. Spitzer* (2nd Cir. 2005) 408 F3d 112, 114.)   A "substantial loss of business" absent preliminary injunctive relief shows "irreparable injury." (*Doran v. Salem Inn, Inc.* (1975) 422 US 922, 932; *Grand River Enterprises Six Nations, Ltd. v. Pryor* (2nd Cir. 2007) 481 F3d 60, 67 – Loss of current or future market share may constitute irreparable harm.)  Plaintiff must demonstrate "immediate threatened harm." (*Caribbean Marine Services Co., Inc. v. Baldrige* (9th Cir. 1988) 844 F2d 668, 674; *Midgett v. Tri-County Metro. Transp. Dist. of Oregon* (9th Cir. 2001) 254 F3d 846, 850-851.)

As set forth in Section E of the statement of facts, unless this Court intervenes and issues the requested temporary restraining order and preliminary

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1   injunction, Global will be forced to chase its Domain Names around the world and

2   will thereby suffer immediate and irreparable injury if relief is not immediately

3   granted for which no remedy at law will be adequate. The Global Entities will

4   further suffer a tremendous loss of its goodwill, client base, market share and

5   business revenue if it is unable to continue with its Internet marketing campaign

6   unaltered throughout the pendency of the present matter. (*Stephen Affid.*, ¶ 42.)

7       A threatened loss of prospective customers or goodwill has been held to

8   support an issuance of a preliminary injunction. (*Stuhlbarg Int'l Sales Co., Inc. v.*

9   *John D. Brush & Co. Inc.* (9th Cir. 2001) 240 F3d 832, 841.)  Damage to the

10  goodwill of a business is often difficult to calculate thus supporting a finding of

11  irreparable injury. (*Rent-A-Center, Inc. v. Canyon Television & Appliance* (9th Cir.

12  1991) 944 F2d 597, 603.)  Accordingly, because Global Entities would suffer a

13  severe loss of business revenue, goodwill and market share if preliminary relief is

14  not granted, Global Entities request for temporary relief must be granted.

15      Global Entities' would also be deprived of a unique contractual right under

16  the Agreement of which there is no adequate remedy if preliminary relief was not

17  granted. (*Stephen Affid.*, ¶ 43.)  In particular, if the Court does not issue

18  preliminary relief, Global Entities will (1) be further subjected to potential

19  litigation for the issues identified in the Atlanta Complaint and the San Diego

20  Complaint; (2) be unable to access the Domain Names and websites in order to

21  further its Internet marketing campaigns; and (3) be unable to access and transfer

22  the Internet marketing campaigns under the AdWords and AdCenter accounts,

23  including the advertising words and keywords purchased under the AdWords and

24  AdCenter accounts which are a substantial part of Global Entities marketing efforts

25  which it is entitled to under the Agreement. (*Stephen Affid.*, ¶ 44.)

26      As set forth in *Reuters Ltd. v. United Press Int'l, Inc.*, wrongful conduct that

27  deprives plaintiff of a unique contractual right (one of which there is no available

28  substitute) may constitute irreparable injury where damages would be difficult to

COHEN &
RICHARDSON, PC
L SEGUNDO, CALIFORNIA

20

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

quantify at trial. *Reuters Ltd. v. United Press Int'l, Inc.* (2nd Cir. 1990) 903 F2d 904, 908-909 – supplier of foreign news pictures threatened to stop providing those pictures to a wire service; *Starlight Sugar, Inc. v. Soto* (1st Cir. 1997) 114 F3d 330, 332 – "loss of unique or fleeting business opportunity can constitute irreparable injury.")  Furthermore, irreparable harm may also be found where defendant wrongfully deprives plaintiff of a contractual right that would allow plaintiff to expand its business; e.g., by attracting customers who would purchase other goods, or by creating an opportunity for plaintiff's overall business to expand. (*Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.* (2nd Cir. 1995) 60 F3d 27, 37-38.)  Here, Global Entities are clearly being deprived of a unique contractual right which would prevent Global Entities from expanding its business if preliminary relief was not granted. As a result of the foregoing, Global Entities' Application for a Temporary Restraining Order and OSC re preliminary injunction must be granted.

## D. The Balancing of the Hardships Favors Issuance of a Temporary Restraining Order and Injunction.

Before a preliminary injunction may issue, the Court must identify the harm that a preliminary injunction might cause the defendants and weigh it against a plaintiff's threatened injuries.  "(T)he real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied." (*Scotts Co. v. United Industries Corp.* (4th Cir. 2002) 315 F3d 264, 284.)  "A plaintiff who does not have a very high probability of ultimately prevailing will be entitled to preliminary relief if he faces very great irreparable harm and the defendant very little (unless third parties would be hurt)." (*Ayres v. City of Chicago* (7th Cir. 1997) 125 F3d 1010, 1013 (parentheses in original).)

The balance of the hardships in this case are, in essence, is entirely in favor of the Global Entities because Defendants have no right, title or interest in the Domain Names and the AdWords and AdCenter accounts. (*Stephen Affid.*, ¶ 46.)

1   Even if Defendants did have such rights, Defendants would not suffer any hardship
2   if a temporary restraining order seeking largely the status quo and preliminary
3   injunction were granted transferring and/or freezing the Domain Names and
4   AdWords and AdCenter accounts until judgment is entered in this matter because
5   the right to register the Domain Names and AdCenter and AdWords accounts has
6   no value to Defendants as they are not in the business of selling servicing and
7   repairing overhead garage doors to residential and commercial consumers. The
8   only value to Defendants for the names is to threaten to use them to harm Global
9   Entities' business which is what this application seeks to prevent. (*Stephen Affid.*,
10  ¶ 47.) Accordingly, for all the reasons set forth above, Global Entities respectfully
11  requests the Court grant its application for the issuance of a temporary restraining
12  order and OSC re preliminary injunction against Defendants.

13  **E.   The Relief Sought is in the Best Interest of the Public.**

14        The Court must weigh the public's interest and potential consequences to the
15  public when deciding whether to grant a preliminary injunction. (*Winter v.*
16  *Natural Resources Defense Counsel, Inc.* (2008) US, 129 S. Ct. 365, 375.)
17  However, where the injunctions reach is narrow and affects only the parties with
18  no impact on nonparties, "the public interest will be at most a neutral factor in the
19  analysis rather than one that favors granting or denying the preliminary
20  injunction." (*Sotormans, Inc. v. Selecky* (9th Cir. 2009) 586 F3d 1109, 1139.)  But
21  if the injunction goes beyond the parties, carrying with it a potential for public
22  consequences, the "public interest" becomes relevant to whether an injunction
23  should issue: "Courts of equity may, and frequently do, go much farther both to
24  give and withhold relief in furtherance of the public interest than they are
25  accustomed to go when only private interests are involved." (*United States v. First*
26  *Nat'l City Bank* (1965) 379 US 378, 383, 85 S.Ct. 528, 531; *United States ex rel.*
27  *Rahman v. Oncology Assocs., P.C.* (4th Cir. 1999) 198 F3d 489, 497 (internal
28  quotes omitted))

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

Here, there is a substantial public interest in ensuring that the Defendants no longer control the Domain Names so that they cannot continue to violate the rights of third parties as is alleged in the Atlanta and San Diego cases. (*Stephen Affid.*, ¶ 48.)  On information and belief, and from the facts alleged in the Atlanta Complaint and San Diego Complaint, Defendants may be using Domain Hijacking and Domain Squatting[3] techniques in order to obtain a favorable position on search sites such as Google, Bing and Yahoo by using the Domain Names, AdWords and AdCenter accounts in a manner that may have necessitated the Atlanta Complaint and the San Diego Complaint. (*Campbell Affid.*, ¶ 43.)  Accordingly, in order to prevent any further unlawful activity from occurring that may harm the public, a temporary restraining order and a preliminary injunction must be put in place.

## F. Ex Parte Relief Is Appropriate In Cases Of Cybersquatting.

The courts, and in particular the Ninth Circuit, generally recognize the need for *Ex Parte* relief in cybersquatting cases. *See e.g., Reebok Intern. Ltd. v. Marnatech Enterprises, Inc.,* 970 F.2d 552, 554 (9th Cir. 1992); *Sony Computer Entm't Am., Inc v. Gamemasters,* 87 F. Supp. 2d 976, 978 (N.D. Cal. 1999); *Dell, Inc. v. Belgiumdomains, LLC,* 2007 WL 6862341, *2 (S.D. Fla. Nov. 21, 2007). As the court observed in *Dell*:

> [a case involving cyberpiracy] is even more compelling than in a typical counterfeiting case involving counterfeit clothing, footwear, DVDs, or software.  Whereas in those cases there is typically a substantial amount of tangible evidence in the form of counterfeit goods, counterfeit packaging, and/or other means for making the counterfeit goods, which could be difficult to destroy of move because the nature of the amount of evidence, the vast majority of evidence of the Defendant's cybersquatting scheme in this case is in electronic form and subject to quick, easy, untraceable destruction by Defendants.

---

[3] Domain Hijacking or Domain Squatting: the act of trafficking in, or using a domain name with bad faith intent to profit from the goodwill of a trademark belonging to someone else.

COHEN &
RICHARDSON, PC
. SEGUNDO, CALIFORNIA

23

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1   This applies both to any transfer of the Domain Names, alteration of

2   websites, and the deletion of any data within the AdWords and AdCenter PPC

3   accounts. Both the Domain Names and PPC Accounts could be forever altered in

4   moments.

5   ### G. The Global Entities Should Not be Required to Post a Bond.

6       Federal courts construing Federal Rule of Civil Procedure 65 permit a trial

7   court to require no bond where the nonmoving party failed to demonstrate any

8   injury.  "[T]he trial judge has wide discretion in the manner of requiring security

9   and if there is an absence of proof showing the likelihood of harm, certainly no

10  bond is necessary." (*Continental Oil Co. v. Frontier Refining Co.*, 338 F.2d 780,

11  782 (10th Cir. 1964); *accord Doctor's Assocs., Inc. v. Stuart,* 85 F.3d 975, 985 (2d

12  Cir. 1996); *See also West Virginia Highlands Conservancy v. Island Creek Coal

13  Co.,* 441 F.2d 232, 236 (4th Cir. 1971.) (holding that a nominal bond of $100 was

14  sufficient where defendant failed to show it would suffer more than negligible

15  harm as a result of having to delay timber cutting until the issues raised in the

16  litigation could be decided.)

17      Here, there is no indication that Defendants will suffer any cognizable harm

18  during the time the temporary restraining order and preliminary injunction are in

19  effect.  The Order merely requests for the transfer of the Domain Names and the

20  AdWords and AdCenter accounts as required under the terms of the Agreement

21  between the parties to Global Entities. It further requests the Court to issue an

22  order enjoining (1) Global Entities and E Dating from transferring, assigning

23  and/or making changes to the registry of the Domain Names and (2) Defendants

24  from transferring, assigning, destroying and/or making changes to the AdWords

25  and AdCenter accounts until judgment determining the rights of the parties is

26  ordered.

27      This will not prevent Defendants from satisfying its obligations under the

28  Agreement to the extent the Global Entities wish to continue with this same. This

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

24

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**

1  motion simply requires preservation of the status quo. Accordingly, because the

2  Defendants will not be harmed by the issuance of a temporary restraining order or

3  preliminary injunction, the Global Entities should not be required to post a bond.

4  **IV.**   **CONCLUSION**

5       Based upon the foregoing, Global Entities respectfully request that this

6  Court grant the TRO Application in its entirety and enter the Order to Show Cause

7  filed concurrently herewith.

8

9  DATED:  March 3, 2011                    COHEN & RICHARDSON, PC

10

11

12

13

14  JEFFREY A. COHEN
    jcohen@corichlaw.com

15  ERIK S. VELIE
    evelie@corichlaw.com

16  Cohen & Richardson, PC

17  2321 Rosecrans Avenue, Suite 4210
    El Segundo, California, 90245

18  (310) 469-9600 – Telephone

19  (310) 469-9610 – Facsimile
    Attorneys for Plaintiff, Global Development

20  Strategies, Inc. and Global Distribution

21  Services, Inc.

22

23

24

25

26

27

28

COHEN &
RICHARDSON, PC
EL SEGUNDO, CALIFORNIA

25

**EX PARTE APPLICATION FOR TRO AND OSC RE: PRLIMINARY INJUNCTION**