UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | | |
|---|---|---|---|
| CATHERINE JEANG | LAURA ELIAS | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: | |
| Jeffrey A. Cohen<br>Erik S. Velie | | Karl S. Kronenberger | |

**Proceedings:**   **ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

## I.   INTRODUCTION

On March 8, 2011, plaintiffs Global Development Strategies, Inc. and Global Distribution Services, Inc. (collectively, "Global") filed a complaint in the instant action against Mobile Motion, Inc. ("Mobile Motion"), Doron Kim ("Kim"), EDATING For Free, Inc. ("EDating") and Does 1-10.  The complaint alleges claims for: (1) violation of anti-cybersquatting consumer protection, pursuant to 15 U.S.C. § 1125(d); (2) breach of oral contract; (3) breach of implied-in-fact contract; (4) breach of implied covenant of good faith and fair dealing; (5) conversion; and (6) fraud.  On March 8, 2011, plaintiffs also filed an ex parte application seeking a temporary restraining order ("TRO") and order to show cause re preliminary injunction, and an ex parte application seeking leave to take immediate discovery.  The Court granted both applications the same day.

On March 9, 2011, defendants filed an ex parte application seeking relief from the TRO.  On March 10, 2011, plaintiffs filed an opposition to defendants' ex parte application.  On March 10, 2011, plaintiffs also filed an application for a supplemental order with respect to the Court's March 8, 2011 order on their ex parte application.  On March 11, 2011, defendants filed an opposition to plaintiffs' application for a supplemental order.  On March 11, 2011, the Court denied plaintiffs' application for a supplemental order, and denied defendants' application for an order dissolving the TRO.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

On March 16, 2011, defendants filed a response to the Court's order to show cause re: preliminary injunction. On March 18, 2011, plaintiffs filed a reply in support of their application for preliminary injunction. On March 20, 2011, defendants filed a supplemental declaration of defendant Kim in support of their response to the order to show cause. A hearing was held on the application for preliminary injunction on March 21, 2011. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.  LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S. Ct. 365, 375 (2008). The Ninth Circuit summarized the Supreme Court's recent clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). A "serious question" is one on which the movant "has a fair chance of success on the merits." Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir. 1984).

## III.  DISCUSSION

Plaintiffs, entities in the garage door sales and service business, allege that defendants entered into an oral agreement with plaintiffs' predecessors in interest "to provide internet marketing services to the Old Corporations in exchange for specified compensation from the Old Corporations." Compl. ¶ 7, Stephens Decl. ¶¶ 18, 22. "Under the terms of the Agreement, the Old Corporations and Mobile agreed that Mobile would handle and oversee all internet marketing activities for the Old Corporations in furtherance of the Old Corporations' internet marketing campaign, including but not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

limited to servicing of the Old Corporations' websites, Pay-Per-Click advertising, SEO and domain name registration . . . . In exchange for these services, the Old Corporations agreed to pay Mobile a monetary commission of a percentage of the amount of revenue the Old Corporations received through the Internet Services." Compl. ¶ 8, Stephens Decl. ¶24. Additionally, "[t]he parties agreed that the ownership of any and all Intellectual Property, Domain Names, websites, Pay-Per-Click accounts and Pay-Per-Click keywords purchased under such Pay-Per-Click accounts would be the sole property of the Old Corporations. It was further understood and agreed under the Agreement that any domain names purchased and registered by Mobile would be registered to and for the benefit of the Old Corporations and the right to register such domains would be vested in the Old Corporations. Further, it was understood and agreed between the parties that Plaintiffs would be entitled to immediate access and use of any and all Pay-Per-Click accounts and Pay-Per-Click keywords upon demand by Plaintiffs. Plaintiffs and Mobile also agreed that the Agreement could be terminated at any time by either party. The Old Corporations and Mobile further agreed . . . that all services, fees and charges and other expenses related to obtaining and registering domain names, the websites, Pay-Per-Click accounts and key words purchased under such accounts for the internet marketing campaign would be the [sic] paid for by the Old Corporations." Compl. ¶¶ 23-24, Stephens Decl. ¶ 24. To facilitate this payment, plaintiffs provided defendants with use of credit cards in their names. Compl. ¶ 26, Stephens Decl. ¶ 25.

Plaintiffs further allege that in or about September 2010, they discovered that defendants "had registered and continued to renew the Domain Names in Mobile Motion's name and that the AdWord and AdCenter accounts were set up in the name of Mobile Motion and not Plaintiffs. Since discovery of this fact, Plaintiffs have demanded and continue to demand the immediate transfer of the registration of the Domain Names and access and use to the Google Ad Words and Microsoft AdCenter accounts (which contain the Pay-Per-Click keyword terms) to Global Distribution Services, Inc.; and Mobile has continually and consistently failed and refused, and continue to fail and refuse, to return the property rights to Plaintiffs in breach of the agreement." Compl.¶ 30, Stephens Decl. ¶¶ 26, 27, 29. Plaintiffs allege that defendants additionally used plaintiffs' credit cards "for purchases of goods and services unrelated to the agreement." Compl. ¶ 29, Stephens Decl. ¶ 27. Based on these facts, plaintiffs allege claims for (1) violation of anti-cybersquatting consumer protection, pursuant to 15 U.S.C. § 1125(d); (2) breach of oral contract; (3) breach of implied-in-fact contract; (4) breach of implied

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

covenant of good faith and fair dealing; (5) conversion; and (6) fraud.  Plaintiffs seek temporary relief to "enjoin Defendants from transferring, altering, destroying and/or making changes to the Domain Names, AdCenter and AdWords accounts and to require them to continue to maintain the Domain Names, PPC Accounts, Websites and Phone Numbers in their current working order pending a further order of this court." Application at 2.

Defendants dispute plaintiffs' characterization of the agreement between the parties.  Specifically, defendants contend that "[u]nder the Agreement–as under all of its agreements with garage door service companies, including Plaintiffs–Mobile Motion was entitled to register, renew, or lease domain names that Mobile Motion expected would generate favorable leads for Peter Stephens' companies (collectively, the 'Domains'). [Kim Decl.] ¶ 12.  Under the Agreement–as under all its agreements–Mobile Motion retained all ownership and leasehold rights to the Domains as well as the website content Mobile Motion created and posted thereon. . . . Neither Mobile Motion nor any other Defendant ever represented to Peter Stephens, Plaintiffs, or their predecessors that Mobile Motion (1) would register the Domains in Plaintiffs' names, or (2) that the Domains were, in fact, registered to Plaintiffs.  (Id. ¶¶ 13-14)." Response at 4.

Defendants argue that plaintiffs' claims are time-barred because plaintiffs could have determined at any time that the domain names were held in defendants' names, by completing a simple search.  Id.  Moreover, defendants argue, evidence indicates that plaintiffs were aware that defendants owned the domain names in question.  Id. at 5.  Specifically, defendants submit e-mails from Misti Stephens, whom they allege is an employee of one of plaintiffs' predecessors-in-interest (A AAA Allstate Overhead Garage Door, Inc. "A AAA") that they characterize as an attempt to purchase the domain names from defendants (thus indicating an awareness of their ownership).  Id. at 5-7, Exh. A to Perez Decl.  Following the email exchange between Misti Stephens and David Perez, defendants' CEO, defendants contend that A AAA chose not to purchase the domain names, but instead to register similar names and to "cop[y], nearly verbatim, the website template and design from the Mobile Motion Domains that AAA had previously attempted to purchase."  Response at 8.  "Mobile Motion and AAA no longer did business together after the preceding events, but Mobile Motion continued to generate leads for Peter Stephens' other entities." Id. at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

     Based on this evidence of actual and constructive notice of the ownership of the domain names, defendants argue that plaintiffs cannot show a likelihood of success on the merits of their claims because they are all time-barred. Defendants argue that plaintiffs allege that the wrongful acts took place seven years ago, in 2003, that the statutes of limitations for plaintiffs claims are two years for their contract claims and three years for conversion and fraud claims, and that their Lanham Act claim is subject to laches. Id. at 10. Defendants argue that equitable tolling is not appropriate in this case because plaintiffs "do not allege that they lacked a means of obtaining the knowledge that the Domains were registered to Mobile Motion, nor could they." Id. at 12. Additionally, defendants argue that equitable tolling is improper because "communications between the parties from 2008 prove that Plaintiffs–through its predecessor, AAA–had actual knowledge that Mobile Motion owned the Domains and the website content thereon. . . . AAA repeatedly offered to purchase certain Domains from Mobile Motion, demonstrating that AAA recognized: (1) that the Domains were registered to Mobile Motion, not AAA; (2) that Mobile Motion owned the content on the Domains; (3) that AAA was not entitled to ownership of the Domains under the oral agreement; and (4) that AAA could only obtain ownership of the Domains in exchange for valid consideration to Mobile Motion." Id. at 13.

     Defendants also argue that plaintiffs' claims fail on the merits. With respect to the cybersquatting claim, defendants argue that plaintiffs' claims will fail because the "domain names at issue comprise generic marks–or at the very least descriptive marks without secondary meaning." Id. at 15. With respect to plaintiffs' conversion and breach of contract claims, defendants argue that plaintiffs cannot show likelihood of success on the merits because "[t]he evidence supports Mobile Motion's position that, under the terms of the Agreement, Mobile Motion was entitled to register and own the Domains." [1] Id. at 18. With respect to plaintiffs' fraud claim, defendants argue that the complaint fails to meet the pleading standards outlined in Rule 9(b), and, moreover, "when Plaintiffs

---

[1] In addition to the evidence submitted with respect to the dispute between defendants and A AAA, that defendants contend supports this inference, defendants submit evidence that Mobile Motion itself made re-registration payments to registrars related to most of the domain names listed in plaintiffs' complaint. Kim Decl. Re. Domain Reg. Fees.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

sought and obtained the TRO based on their contract claims, their tort claims became unactionable under the doctrine of election of remedies." Id. at 21.

Moreover, defendants argue, plaintiffs fail to establish irreparable injury, and defendants will, in fact, suffer irreparable injury if a preliminary injunction were to issue. "[A]ny disruption in the operation of E Dating's website, which is unrelated to this case, would significantly impair E Dating's business.  The injunction will also prevent Mobile Motion from earning income from other clients, which is necessary in the face of Plaintiff's refusal to pay Mobile Motion under the Agreement.  Moreover, for the domain names and websites that are at issue, the requested injunction would result in all revenue deriving from the websites flowing to Plaintiffs, without any accounting or tracking mechanism, and depriving Mobile Motion of their portion of such revenue." Id. at 23-24.

The Court concludes that a preliminary injunction should issue in this case.  First, plaintiffs have demonstrated that there is at least a serious question with respect to the merits of plaintiffs' contract and conversion claims.  There is a genuine dispute as to the terms of the oral agreement and the resulting ownership of the domain names and accounts.  Each side has submitted a declaration of one of the its principals, attesting to the existence of the agreement as it understands it, and both declarations appear to be equally credible. See Peter Stephens Decl. at ¶¶ 22-26; Kim Decl. ¶¶ 3-7.

Defendants argue that the additional evidence of the dispute with A AAA and the invoices attached to the supplemental Kim Declaration demonstrate that defendants have rightful ownership of the domain names and that plaintiffs have always been aware of this ownership.  Plaintiffs, in their reply and in oral argument, contend that this evidence is inconclusive at best.  With respect to the email from Misti Stephens in connection with the dispute with A AAA, plaintiffs argue that this business entity was owned by Ronnie Stephens, the brother of Peter Stephens, and that "Peter Stephens and Global Entities have no interest or affiliation with" it.  Reply at 2.  Additionally, plaintiffs assert that "Ronnie Stephens and Misti Stephens have no business interest or affiliation in any of the Global Entities predecessors-in-interest or the Global entities." Id.  Moreover, plaintiffs argue, even if A AAA was a predecessor-in-interest to Global, "Defendants [sic] allegations that Misti Stephens' email chain with David Perez somehow acknowledges Mobile Motion, Inc.'s ownership of domain names is absurd.  A cursory reading of the email chain identified within David Perez's declaration directly shows that the only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

discussion between the parties was *for the purchase of websites, and not domain names*." Id. at 2-3.

With respect to the invoices submitted with the supplemental Kim Declaration, plaintiffs' counsel argued at oral argument that while the Kim Declaration states that the payments memorialized in the invoices were not made with plaintiffs' credit cards, the invoices do not actually prove that. Moreover, plaintiffs' counsel argued, the invoices are not related to any payments made before 2007, while the contract was entered into in 2003. Therefore, plaintiffs' counsel argued, these invoices do not contradict plaintiffs' contention that they provided defendants with access to their credit cards in order to purchase domain names, and that domain names were actually purchased using these credit cards. The Court is satisfied by the response of plaintiffs to defendants' additional evidence in reply and in oral argument that the inferences to be drawn from the evidence presented is not conclusive, as claimed by defendant. Moreover, it appears from the current record that plaintiffs have at least a fair chance of success on the merits on their contract and conversion claims, especially to the extent those claims are based on the refusal of defendants to transfer registration of the domain names and provide use and access to the AdWords and AdCenter Accounts. Therefore, the Court concludes that there is at least a serious question going to the merits of plaintiffs' contract and conversion claims.

Additionally, the Court concludes that the plaintiffs will suffer irreparable injury if a temporary injunction does not issue, and that the balance of equities tips in favor of the plaintiffs. Plaintiffs argue that if the injunction does not issue, defendants will alter the websites to direct potential customers away from plaintiffs' businesses, or transfer the websites to competitors. The Court agrees that in the absence of an injunction, these results would be likely, and that the harm caused thereby would be irreparable. See Design Furnishings, Inc. v. Zen Path, LLC, 2010 WL 5418893 (E.D. Cal. Dec. 23, 2010) at *6 ("[I]ntangible injuries that are incapable of measurement, like reputation or goodwill, may constitute irreparable harm. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F. 2d 597, 603 (9th Cir. 1991). The threatened loss of prospective customers also constitutes irreparable harm. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F. 3d 832, 841 (9th Cir. 2001) (trademark case); *Super-Krete Int'l. Inc. v. Sadleir*, No. CV 10-01966, 2010 WL 1688533 at *8 (C.D. Cal. Apr. 22 2010) ('Even without this presumption [of irreparable harm in a trademark case], Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

has demonstrated irreparable injury based on the threatened loss of prospective customers who would be diverted away from its website should it be unable to gain control over the domain name.')").

Further, the Court finds that the arguments made by defendants with respect to the harm that they will suffer as a result of a preliminary injunction may be mitigated by a narrow tailoring of the injunction, and therefore the Court rejects the broad sweep of the injunction as requested by plaintiffs. Instead, the Court finds that the limitations requested by plaintiff and ordered by this Court as a temporary restraining order should be extended pending the final determination of this action. However, the Court finds that the proper injunction would prevent any breach of the oral contract as described by plaintiffs, and therefore additionally requires plaintiffs to continue to pay as required under the contract–which the Court understands to be five percent of revenue generated through use of the domain names–during the pendency of the injunction.[2] This requirement is added in light of defendants' argument that they will be harmed by an injunction to the extent that they do not receive further commission payments from payments for the use of the domain names, and to the extent the injunction prevents them from entering into contracts with other garage door companies for use of these domain names. With respect to "E Dating," the Court finds that the injunction should not affect this segment of defendants' business, as the domain names at issue are not those used by defendants in connection with it. The Court also concludes that the injunction would not injure any public interest, and, in fact, may benefit the public interest to the extent that it prevents the transfer of intellectual property before a resolution on the merits as to the ownership of that property.

---

[2] The Court also recognizes plaintiffs' counsel's contention at oral argument that, since the issuance of the TRO and in contravention of the TRO and the alleged agreement, that certain of the websites at issue had been altered. To the extent any alterations, transfers, or cancellations have been made by defendants since the issuance of the TRO, the Court in the instant injunction also requires defendants to return the domain names and accounts at issue to their state as of March 8, 2011, when the TRO was issued.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

Finally, the Court concludes that, as written, the preliminary injunction is not likely to cause financial harm to defendants, and therefore requires only a nominal bond in the amount of $1,000.

## IV.   CONCLUSION

In light of the foregoing, the Court GRANTS plaintiffs' application for a preliminary injunction and issues the following immediate preliminary injunction pending the final hearing and determination on the merits of the instant case. The purpose of the injunction is to enjoin any breach of the oral agreement as described by plaintiff, in light of the Court's conclusion that there is at least a serious question as to its existence and terms. This preliminary injunction shall take effect immediately upon the posting with the Clerk of the Court a bond in the amount of $1,000.

(1) Defendants are prohibited from transferring the registration of, assigning, selling, leasing, altering, relinquishing, injuring or otherwise making changes to, in any matter, the existing registration of the Domain Names (118 'Domain Names' related to the sale and service of garage doors as defined in the Complaint filed in this action) and identified within Exhibit B to the Complaint;

(2) Defendants shall maintain the current Domain Name Registrations in full force and effect and shall make no changes to the DNS information or IP addresses associated therewith without a further order of this court.

(3) Defendants shall not access, alter, delete, assign, transfer, injure, and/or destroy, in any manner, the Internet Pay-Per Click marketing accounts, campaigns, search terms and keywords contained within the AdWords Accounts and AdCenter Accounts.

(4) Defendants shall not make or permit any changes to any of the Websites to which the Domain Names (hosted by Rackspace, Inc.) currently point including but not limited to company names, contact information, phone numbers and addresses displayed thereon.

(5) Defendants shall not cancel, change, alter or re-direct the phone numbers (maintained by Marchex, Inc.) associated with any of the Websites to which the Domain Names are currently pointing.

(6) To the extent that defendants have engaged in any of the foregoing activity following the issuance of the TRO in this case on March 8, 2011, defendants

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1966 CAS (AGRx) | Date | March 21, 2011 |
|---|---|---|---|
| Title | GLOBAL DEVELOPMENT STRATEGIES, INC., ET AL v. MOBILE MOTION INC., ET AL. | | |

      shall return the Domain Names, Websites, AdWords Accounts and AdCenter Accounts to their condition as of the issuance of that order.

(7)    Plaintiffs shall continue to pay commission to defendants as required under the terms of the oral agreement with defendants.

      IT IS SO ORDERED.

|  |  | 00 | : | 43 |
|---|---|---|---|---|
|  | Initials of Preparer | | CMJ | |